IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

EDJELEDEIRA MELENDEZ RIVERA [11],

Defendant.

CRIM. NO.: 15-561(JAG)

## REPORT AND RECOMMENDATION

Defendant Edjeledeira Melendez Rivera moves the Court to suppress all statements she made during an interrogation in the investigative phase of the case. The matter was referred to the undersigned for report and recommendation by the presiding district judge. *See* Docket No. 651. Defendant argues that the interview was a custodial interrogation, and, therefore, given the lack of *Miranda* warnings, the Government cannot use the statements it obtained that afternoon. Below, we make findings of fact, lay out the principles of custodial interrogation, and explain why we believe Defendant's motion should be denied.

### I.  Findings of Fact

On December 1, 2016, an evidentiary hearing was held to look into the facts surrounding the May 4, 2015, interrogation. Special Agent Robert Wolfe of the United States Department of Education, Office of the Inspector General, testified for the Government, and the defendant testified on her own behalf. S/A Wolfe and Defendant gave similar stories about what happened on May 4, 2015, but they differed in the details in important

U.S. v Meléndez                                                                                  Page 6

respects. After listening to the whole of their testimonies and observing their demeanor, we find S/A Wolfe to be the a more credible witness, and, where their stories differ, we accept his version of the events.

Around April, 2015, the United States Department of Education, Office of the Inspector General, was conducting an investigation involving fraud in the use of federal funds in the educational services programs. As part of the investigation S/A Priscilla Resto, also from the Office of Inspector General, together with S/A Wolfe, went to the town of Cayey, Puerto Rico, to locate Defendant.[1] Upon arrival at Defendant's mother's house, Defendant's mother explained that she was not home but kept S/A Resto's calling card to have Defendant return the call. A couple of days later Defendant called S/A Resto and agreed to meet the following Monday at 9:00 a.m. at the Burger King in the town of Cayey. Defendant had Monday off. Defendant testified that S/A Resto told her on the phone that she was to be interviewed regarding the tutorial services and procedures of Rocket Learning , since they were interviewing parents regarding the services provided to the students.

S/A Resto arrived at the Burger King accompanied by S/A Wolfe and Jose Rivera, an auditor for the Department of Education. They arrived before Defendant. Defendant arrived with her husband, Hiram Tirado and claims that she observed three armed agents, which caused her great fear. But on cross examination, she recanted, and stated that she never saw Auditor Rivera armed and that S/A's Resto's firearm was inside her purse, which she was only able to observe when S/A Resto looked for something inside. Defendant emphasized how scared she was because of the firearms, but the recanting of her original story diminishes her credibility.[2]

After Defendant's arrival at the Burger King, the S/As' introduced themselves and showed their badges. Thereafter, the group went inside the fast food restaurant to an open

---

**1.**   Defendant was an employee of Rocket Learning, one of the Commonwealth of Puerto Rico's Department of Education service providers.

**2.**   I do not give credence to Defendant's version that S/A Wolfe had his gun visible, in his waistband with the shirt tucked in and without a jacket.

playground area, where children play.  There were a few tables available and the group sat at the farthest table, away from the patrons.[3]  S/A Wolfe selected the table and asked Defendant's husband to step away. This is one of the contested issues between the parties. Defendant argues that she wanted her husband to be with her during the interview, because he goes with her everywhere and he gives her advise and counsel.[4]  She claims that S/A Wolfe ordered Tirado to leave in no uncertain terms.   S/A Wolfe in turn claims that he told Tirado that they wanted to interview his wife alone and that he left.  Tirado stayed in the parking area of the Burger King.  I am not going to delve into the controverted issue of the manner in which Defendant's husband was asked to leave, because a person being interviewed does not have a right per se to have family members present.[5]  *Yarborough v. Alvarado*, 541 U.S. 652, 664-65 (2004)(finding that state court correctly decided that defendant was not under custody despite, among other factors, that defendant's parents "asked to be present at the interview but were rebuffed").

Wolfe testified that he spoke in a low tone of voice, that he told Defendant she was there voluntarily and could leave at any time and/or stop the interview at any time. According to Wolfe, he explained that they were trying to corroborate information already gathered and told Defendant to be truthful. Upon seeing that she was not forthcoming the agents confronted her with documents.  Defendant's version is different.  She claims that she was yelled at, that she was never told that the interview was voluntary, or that she could leave. In fact, Defendant stated that she was interviewed against her will. Defendant further claims that Wolfe told her that "he knew everything" and that she had to "get on board the train, or she would miss it."  The interview lasted over an hour.  Both parties agree that the

---

**3.**   The Burger King was busy, but not packed, according to the testimonies of the two witnesses. S/A Wolfe testified that he chose the table because he did not want their conversation to be overheard.  Defendant sat on one side of the table and S/As' Wolfe, Resto and the auditor on the other side. S/A Resto was in the middle. Therefore, Defendant did not have anyone by her side, or in any way restricting her movements or cramping her space.

**4.**   Tirado is not a lawyer.

**5.**   S/A Wolfe testified that it is not usual to interview someone with family members present.

Miranda rights were not afforded.

## II. *Miranda* and Custodial Interrogation

To be entitled to *Miranda* warnings, "an individual need not be under arrest but must be in custody." *United States v. Murdock*, 699 F.3d 665, 669 (1st Cir. 2012) (citing *United States v. Crooker*, 688 F.3d 1, 10–11 (1st Cir. 2012)). When determining whether someone was in custody, the court "examines the circumstances surrounding the questioning and then sees whether those circumstances would cause a reasonable person to have understood his situation to be comparable to a formal arrest." *United States v. Guerrier*, 669 F.3d 1, 6 (1st Cir. 2011). We are "guided by several factors, including 'where the questioning occurred, the number of officers, the degree of physical restraint, and the duration and character of the interrogation.'" *Murdock*, 699 F.3d at 669 (quoting *Guerrier*, 669 F.3d at 6)). Thus, once we find the facts going to the "circumstances surrounding the interrogation," we apply an objective, reasonable-person test to determine whether those circumstances are sufficiently similar to a "formal arrest." *United States v. Hughes*, 640 F.3d 428, 425 (1st Cir. 2011); *see also Stansbury v. California*, 511 U.S. 318, 323 (1994) (noting that the custody determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned").

## III. Analysis

We do not believe that the interrogation was custodial. The interview took place entirely in familiar and neutral surroundings: a fast food restaurant in the town where Defendant resides. She was never handcuffed, touched or otherwise restrained,[6] and she was told explicitly that she could leave at any time.[7] The agents' number   was not

---

6.  *See Hughes*, 640 F.3d at 436 (no custody where defendant not meaningfully restrained); *United States v. Nishnianidze*, 342 F.3d 6, 14 (1st Cir. 2003) (taking into consideration that the agents "did not make physical contact" with the defendant, or "restrained his movement").

7.  *See Guerrier*, 669 F.3d at 6 (no custody where defendant was told he was not under arrest); *United States v. McCarty*, 475 F.3d 39, 46 (1st Cir. 2007) (finding that defendant was not in custody where the officer told him that "he was not under arrest," "was free to leave at any time," and

intimidating,[8] they were in plainclothes,[9] and they never drew their weapons.[10] More importantly, the interview as a whole seems to have been non-confrontational and relaxed.[11]

Defendant probably got nervous when confronted with documents or evidence gathered by the agents as part of the investigation. But this does not make the interview custodial. If the Defendant became fearful when told by the agents they "knew everything" and that she "had to hop on the train while she could," she was probably facing the fear of being caught, or having to decide whether to provide information that implicated friends and co-workers. The evidence adduced at the hearing does not support the notion, however, that the agents were unduly threatening, menacing, or hectoring.[12] To the contrary, they seem to have been fairly respectful.

Given all this, we conclude that a reasonable person in Defendant's position would not have perceived the interview as akin to a formal arrest, and, indeed, would have felt free to terminate the interview at any time. For these reasons, I recommend that the motion to suppress be DENIED.

---

did not have to answer any questions.")

8.  *See Hughes*, 640 F.3d at 436 (no custody where four agents present); *Nishnianidze*, 342 F.3d at 12, 14 (no custody where three agents present); *United States v. Quinn*, 815 F.3d 153, 159 (1st Cir. 1987) (no custody where five agents present).

9.  *See Guerrier*, 669 F.3d at 6 (no custody where agents were in plainclothes and kept their weapons hidden); *Hughes*, 640 F.3d at 436 (non-custodial interrogation where only two agents carried visible weapons and those weapons remained in their holsters).

10. *See United States v. Crooker*, 688 F.3d 1, 11 (1st Cir. 2012) (no custody where agents did not draw their weapons).

11. *See Hughes*, 640 F.3d at 437 (no custody where interview was non-confrontational and relaxed).

12. *See Guerrier*, 669 F.3d at 6 (no custody where the agents did not scream at, badger, or threaten the defendant); *Hughes*, 640 F.3d at 437(defendant was not under custody where the tone of the interview was "relaxed and non-confrontational").

U.S. v Meléndez                                                    Page 6

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 31st  day of January, 2017.

S/ SILVIA CARREÑO-COLL
UNITED STATES MAGISTRATE JUDGE